## 59660. MINGO v. THE STATE.

MCMURRAY, Presiding Judge.

On February 13, 1978, defendant pleaded guilty to charges against him of forgery in the first degree and to theft by taking. He pleaded not guilty to another charge of burglary but after a trial by jury he was convicted as to this charge. The trial court sentenced him to 5 years in the state penal system for the burglary offense. He was to serve 2 years with 3 years probated. As to the offense of forgery in the first degree, he received the same sentence to be served concurrently, and for the misdemeanor offense he received a 12-month probated sentence consecutive to the felony sentences. On August 15, 1978, the State Board of Pardons and Paroles issued him an order of reprieve and an order of conditional commutation conditioned upon compliance with certain regulations set forth on a pledge signed by the defendant and upon failure to abide by said regulations revocation and withdrawal of said reprieve might be ordered. The sentence was to be stayed beginning September 12, 1978. This order stated his maximum sentence would expire December 30, 1978.

On October 10, 1979, the district attorney filed a petition for

revocation of probation, alleging therein that the defendant had violated the terms and conditions of probation in that he did commit the offense of criminal damage to property in the second degree on September 6, 1979. In considering a motion to dismiss this petition in that it failed to adequately provide sufficient notice to the defendant of charges upon which the State brought the petition, it was granted by the trial court without prejudice. But the petitioner was granted permission to amend without prejudice or file a new petition alleging more specifically the alleged crime committed. However, at that hearing on November 9, 1979, the trial court denied another motion attacking the rule of law established by our appellate courts allowing the revocation of probationary sentences upon a finding of "slight evidence" as being violative of due process and equal protection of the laws as guaranteed to the defendant by the Fifth and Fourteenth Amendments to the United States Constitution and the Constitution of the State of Georgia. Defendant prayed that a higher standard of proof be applied so as to afford defendant the protection of his constitutionally guaranteed rights.

The petition for revocation was immediately redrawn to allege with more particularity that the defendant did on September 6, 1979, "intentionally damage the property of . . . [the owner of a jewelry store] . . . without the owner's consent by breaking out the front glass window of the building occupied by the said . . . [owner] . . . said damage exceeding $100.00."

Immediately the defendant filed another motion to dismiss alleging that the grand jury, acting upon an indictment for the alleged crime, after hearing evidence, returned a "no bill" in open court on November 5, 1979, and again alleged that to proceed on this petition further would be a denial of defendant's right to due process of the law and equal protection under the laws as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and the Constitution of the State of Georgia. After a hearing on November 12, 1979, in which the defendant argued the strong dissenting opinions in certain cases of the appellate courts that when a defendant had been indicted and acquitted on a criminal offense his probation should not be revoked based upon the "slight evidence" rule. This motion was denied, and the defendant also reasserted his motion of November 9, alleging the lack of constitutionality of the "slight evidence" rule with reference to probation revocation proceedings. The trial court then heard evidence from a juvenile arrested in the vicinity along with the defendant, who testified positively that the defendant broke out the front window of the jewelry store with a rock.

The court entered its order of revocation adjudging that the

terms of probation had been violated in that the defendant had intentionally damaged the property of the jeweler without the owner's consent by breaking windows (the juvenile admitted they had broken a window earlier in the rear of the jewelry store) and that such action was a violation of the criminal laws of the State of Georgia, "a criminal trespass." The defendant was ordered to serve 2 years in the state penal system, however a further provision was added that "he serve the remainder of his sentence on probation when released from confinement." Defendant appeals. *Held:*

1. As shown above, the juvenile's testimony that the defendant had broken the front window of the jewelry store by throwing a rock through the window was sufficient to authorize the revocation of probation, but when added to the testimony of the police officer who arrested them when he drove to the vicinity of the jewelry store after an alarm had gone off and that he did not see any other person in the area of the jewelry store except the defendant and the juvenile, under all the circumstances the totality of this testimony authorized the trial court's revocation of the probated sentence. *Christy v. State,* 134 Ga. App. 504, 506 (1, 2) (215 SE2d 267); *Harper v. State,* 146 Ga. App. 337 (246 SE2d 391); *Wellons v. State,* 144 Ga. App. 218, 219 (1) (240 SE2d 768).

2. Prior to the hearing the defendant challenged the constitutionality of the "slight evidence" rule, contending that this quantum of evidence authorized by the appellate courts of this state violates the Fifth and Fourteenth Amendments to the United States Constitution as well as denies him due process and equal protection of the laws as guaranteed by the Constitution of the State of Georgia. As stated by the Supreme Court of Georgia in *Johnson v. State,* 240 Ga. 526, 527 (242 SE2d 53), in affirming *Johnson v. State,* 142 Ga. App. 124 (235 SE2d 550), that court adopted the language of the Supreme Court of the United States in Morrissey v. Brewer, 408 U. S. 471, 480 (92 SC 2593, 33 LE2d 484) which is as follows: "The revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations . . . Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." While the review in *Johnson v. State,* 240 Ga. 526, supra, was concerned with the principles of collateral estoppel and double jeopardy, we, nevertheless, hold that the benefit and protection afforded under the due process and equal protection clauses of our state and federal constitutions have not in anywise been violated in that the establishment of a defendant's guilt beyond a reasonable doubt "is not necessary to justify the revocation of a

sentence of probation." *Johnson v. State,* 240 Ga. 526, 527-528, supra.

As stated in Morrissey v. Brewer, 408 U. S. 471, supra, at page 480, the loss of liberty involved in a parole revocation is a serious deprivation requiring that a parolee be afforded due process. That case outlined the minimal requirements of due process to be afforded. Nevertheless, it is clear that the defendant here received "written notice of the claimed violation(s) of parole [probation]," the disclosure of the evidence against him; an opportunity to be heard in person and to present witnesses and document evidence, the right to confront and cross examine adverse witnesses, heard by a neutral and detached judicial officer with a written statement by the fact finder as to the evidence relied on and reasons for revoking probation. We hold that application of the "slight evidence" rule does not deny the defendant due process and equal protection. There is no merit in defendant's complaint that the trial court erred in overruling his timely motion challenging the constitutionality thereof as to the quantum of evidence which is sufficient to authorize the revocation of one's probation.

3. While *Johnson v. State,* 240 Ga. 526, 527, supra, and *Johnson v. State,* 142 Ga. App. 124, supra, involved alleged double jeopardy in violation of the Fifth and Fourteenth Amendments to the United States Constitution, they also control the decision in the case sub judice. Even if the grand jury entered a "No Bill" as to the charge against the defendant as to criminal damage to property in the second degree (the trial judge in the hearing as to the revocation finding "criminal trespass"), there was no violation of the due process guarantee bestowed upon defendant by the Fifth and Fourteenth Amendments to the United States Constitution and the Constitution of the State of Georgia.

*Judgment affirmed. Deen, C. J., Quillian, P. J., Shulman, Banke, Birdsong, Carley and Sognier, JJ., concur. Smith, J., dissents.*

SUBMITTED APRIL 15, 1980 — DECIDED JULY 14, 1980 —

*William P. Bartles,* for appellant.
*E. Byron Smith, District Attorney,* for appellee.

SMITH, Judge, dissenting.

For the reasons expressed in Judge Webb's dissenting opinion in *Dickerson v. State,* 136 Ga. App. 885, 887-897 (222 SE2d 649) (1975), I strongly believe the "preponderance of the evidence" test should have been applied in determining whether appellant violated the

terms of his probation. See American Bar Association Project on Standards for Criminal Justice, Standards Relating to Probation, § 5.4 (Approved Draft 1970). However, even under existing standards, I do not believe appellant's probation revocation was proper. I, therefore, respectfully dissent.

The existing standard of proof in Georgia probation revocation proceedings is governed by the so-called "slight evidence" rule. Under this rule, "[o]nly slight evidence is required to authorize revocation, *Sellers v. State,* 107 Ga. App. 516, 518 (130 SE2d 790), and where there is even slight evidence of misconduct, the appellate court will not interfere with revocation unless there has been manifest abuse of discretion. *Rowland v. State,* 124 Ga. App. 494(3) (184 SE2d 494); *Turner v. State,* 119 Ga. App. 117 (166 SE2d 582)." *Boston v. State,* 128 Ga. App. 576 (197 SE2d 504) (1973).

Appellant's probation revocation was based upon the un-corroborated testimony of an alleged accomplice. Although such testimony is not insufficient per se to establish a violation of the terms of probation, "where uncorroborated accomplice testimony is shown to inherently lack credit, or is sufficiently controverted . . . an abuse of discretion may become manifest." *Christy v. State,* 134 Ga. App. 504, 506 (215 SE2d 267) (1975).

The testimony of the alleged accomplice in the instant case is vague,[1] evasive,[2] and, at times, incomprehensible.[3] In addition the "accomplice" had previously been adjudged a juvenile delinquent and placed in a Youth Development Center. A police officer who was

---

[1] For instance, when asked, "Now did anyone . . . break out any glass that night?," the alleged accomplice responded, "I don't know." The accomplice was then asked the following question: "Well, did you see anyone . . . break out any glass that night?" On this occasion, the alleged accomplice responded: "I seen Mingo broke out the jewelry store . . ."

[2] When asked, "Are you in a Youthful Offender Detention Home?," the witness answered, "I don't know, sir." The witness later stated that he lived with a Mr. Neal Taylor. He testified that he lived with Mr. Taylor "[b]ecause I want to." However, when questioned by the court, the witness gave the following responses: "THE COURT: . . . Have you had to come to court about this thing? THE WITNESS: Yes. THE COURT: What did the Judge do? THE WITNESS: Sent me off. THE COURT: Sent you off? THE WITNESS: Yes. THE COURT: Well, where are you? THE WITNESS: I went over to YDC. THE COURT: You've already come home? THE WITNESS: No, sir."

The alleged accomplice also testified that, after the incident, Mingo ran "across the street." This appears to be at odds with the testimony of the arresting officer. Furthermore, when the witness was asked, "which business or store in downtown Jackson [did] you [run] in the direction of?," he responded, "I don't know."

[3] On several occasions the sheriff served as "interpretor" for the alleged accomplice.

familiar with him testified that, in the past, he has appeared to be "emotionally unstable." The officer stated that on one occasion, "[w]e took him out to the hospital and I don't know what the results of any examination were, but he was unruly [and] uncontrollable . . ."

The only testimony aside from that of the alleged accomplice which bears on appellant's conduct is the testimony of the arresting officer. This testimony places appellant "exactly one block" away from the scene of the crime. Nothing in the officer's testimony connects appellant with the rock-throwing incident. In the words of the officer, "he [appellant] appeared to be attempting to hitch a ride with a vehicle down there." In contrast, appellant's alleged accomplice was observed standing alone, "[d]irectly across the street from Shields' Jewelry."

In sum, the record shows the uncorroborated testimony of the alleged accomplice to be inherently lacking in credit. This testimony alone should not be sufficient to deprive appellant of his liberty, albeit "conditional." See *Johnson v. State,* 240 Ga. 526, 527 (242 SE2d 53) (1978). I believe the trial court abused its discretion in revoking appellant's probation. The judgment should be reversed. *Christy v. State,* supra.